**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VISA INTERNATIONAL SERVICE
ASSOCIATION,
　　　　　　　*Plaintiff-Appellee,*

　　　　　v.

JSL CORPORATION,
　　　　　　　*Defendant-Appellant.*

No. 08-15206

D.C. No.
CV-01-00294-
LRH/LRL

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
January 14, 2010—San Francisco, California

Filed June 28, 2010

Before: Alex Kozinski, Chief Judge, J. Clifford Wallace and
Richard R. Clifton, Circuit Judges.

Opinion by Chief Judge Kozinski

## COUNSEL

Bradley L. Booke, Moriarity, Badaruddin & Booke, Las Vegas, Nevada, for the defendant-appellant.

Michael J. McCue, Lewis and Roca LLP, Las Vegas, Nevada, for the plaintiff-appellee.

## OPINION

KOZINSKI, Chief Judge:

She sells sea shells by the sea shore. That's swell, but how about Shell espresso, Tide motor oil, Apple bicycles and Playboy computers? We consider the application of anti-dilution law to trademarks that are also common English words.

### Facts

Joseph Orr runs eVisa, a "multilingual education and information business that exists and operates exclusively on the Internet," at www.evisa.com. At least he did, until the district court enjoined him. Orr traces the name eVisa back to an English language tutoring service called "Eikaiwa Visa" that he ran while living in Japan. "Eikaiwa" is Japanese for English conversation, and the "e" in eVisa is short for

Eikaiwa. The use of the word "visa" in both eVisa and Eikaiwa Visa is meant to suggest "the ability to travel, both linguistically and physically, through the English-speaking world." Orr founded eVisa shortly before his return to America, where he started running it out of his apartment in Brooklyn, New York.

Visa International Service Association sued JSL Corporation, through which Orr operates eVisa, claiming that eVisa is likely to dilute the Visa trademark. The district court granted summary judgment for Visa, and JSL appeals.

## Analysis

**[1]** A plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark. *See Jada Toys, Inc.* v. *Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). JSL does not dispute that the Visa mark is famous and distinctive or that JSL began using the eVisa mark in commerce after Visa achieved its renown. JSL claims only that the district court erred when it found as a matter of law that eVisa was likely to dilute the Visa trademark.

**[2]** There are two types of dilution, but here we are concerned only with dilution by blurring, which occurs when a mark previously associated with one product also becomes associated with a second. *See* 15 U.S.C. § 1125(c)(2)(B); *Mattel, Inc.* v. *MCA Records, Inc.*, 296 F.3d 894, 903-04 (9th Cir. 2002). This weakens the mark's ability to evoke the first product in the minds of consumers. "For example, Tylenol snowboards, Netscape sex shops and Harry Potter dry cleaners would all weaken the 'commercial magnetism' of these marks and diminish their ability to evoke their original associations." *Mattel*, 296 F.3d at 903. Dilution isn't confusion; quite the contrary. Dilution occurs when consumers form new

and different associations with the plaintiff's mark. "Even if no one suspects that the maker of analgesics has entered into the snowboard business, the Tylenol mark will now bring to mind two products, not one." *Id.*

Whether a defendant's mark creates a likelihood of dilution is a factual question generally not appropriate for decision on summary judgment. *See Jada Toys, Inc.*, 518 F.3d at 632. Nevertheless, summary judgment may be granted in a dilution case, as in any other, if no reasonable fact-finder could fail to find a likelihood of dilution. Congress has enumerated factors courts may use to analyze the likelihood of dilution, including the similarity between the two marks and the distinctiveness and recognition of the plaintiff's mark. 15 U.S.C. § 1125(c)(2)(B)(i), (ii), (iv); *see also PerfumeBay.com, Inc.* v. *eBay, Inc.*, 506 F.3d 1165, 1181 n.9 (9th Cir. 2007). And, in an appropriate case, the district court may conclusively determine one or more of these factors before trial.

**[3]** The marks here are effectively identical; the only difference is the prefix "e," which is commonly used to refer to the electronic or online version of a brand. That prefix does no more to distinguish the two marks than would the words "Corp." or "Inc." tacked onto the end. *See Horphag Research Ltd.* v. *Garcia*, 475 F.3d 1029, 1036 (9th Cir. 2007) (use of identical mark provides "circumstantial evidence" of dilution).

**[4]** And Visa is a strong trademark. "In general, the more unique or arbitrary a mark, the more protection a court will afford it." *Nutri/System, Inc.* v. *Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987). The Visa mark draws on positive mental associations with travel visas, which make potentially difficult transactions relatively simple and facilitate new opportunities and experiences. Those are good attributes for a credit card. But those associations are sufficiently remote that the word visa wouldn't make people think of credit cards if it weren't for the Visa brand. "This suggests that any asso-

ciation is the result of goodwill and deserves broad protection from potential infringers." *Dreamwerks Prod. Grp., Inc.* v. *SKG Studio*, 142 F.3d 1127, 1130 n.7 (9th Cir. 1998). Visa also introduced uncontroverted evidence that Visa is the world's top brand in financial services and is used for online purchases almost as often as all other credit cards combined. This was enough to support the district court's summary judgment.

**[5]** JSL vigorously contests the validity of market surveys and expert testimony introduced by Visa to show that eVisa dilutes the Visa mark, and it claims that evidence should have been excluded under *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). But a plaintiff seeking to establish a likelihood of dilution is not required to go to the expense of producing expert testimony or market surveys; it may rely entirely on the characteristics of the marks at issue. *See* 15 U.S.C. § 1125(c)(2)(B) (listing relevant factors). Expert testimony and survey evidence may be necessary in marginal cases, or where a defendant introduces significant evidence to show that dilution is unlikely. But JSL presented nothing, other than Orr's statement that he did not intend to dilute the Visa mark, to rebut the inference of likely dilution created by the strength and similarity of the marks. Good intentions alone do not negate a showing of a likelihood of dilution. We therefore need not reach the admissibility of Visa's expert testimony and market survey evidence.

**[6]** JSL claims the eVisa mark cannot cause dilution because, in addition to being an electronic payment network that's everywhere you want to be, a visa is a travel document authorizing the bearer to enter a country's territory. When a trademark is also a word with a dictionary definition, it may be difficult to show that the trademark holder's use of the word is sufficiently distinctive to deserve anti-dilution protection because such a word is likely to be descriptive or suggestive of an essential attribute of the trademarked good. Moreover, such a word may already be in use as a mark by

third parties. For example, we rejected a dilution claim by Trek Bicycle Corporation for its "Trek" mark in part because it played heavily off the dictionary meaning of "trek," suggesting that the bicycles were designed for long or arduous journeys. *Thane Int'l, Inc.* v. *Trek Bicycle Corp.*, 305 F.3d 894, 912 n.14 (9th Cir. 2002). Additionally, the creators of the Star Trek series had already "incorporated this common English language word into their trademark," and the "glow of this celebrity ma[de] it difficult for Trek to obtain fame using the same word." *Id.* In our case, Visa's use of the word visa is sufficiently distinctive because it plays only weakly off the dictionary meaning of the term and JSL presented no evidence that a third party has used the word as a mark.

**[7]** It's true that the word visa is used countless times every day for its common English definition, but the prevalence of such non-trademark use does not undermine the uniqueness of Visa as a trademark. *See* 2 *McCarthy on Trademarks and Unfair Competition* § 11:87 (4th ed. 2010). "The significant factor is not whether the word itself is common, but whether the way the word is used in a particular context is unique enough to warrant trademark protection." *Wynn Oil Co.* v. *Thomas*, 839 F.2d 1183, 1190 n.4 (6th Cir. 1988). In the context of anti-dilution law, the "particular context" that matters is use of the word in commerce to identify a good or service. There are, for instance, many camels, but just one Camel; many tides, but just one Tide. Camel cupcakes and Tide calculators would dilute the value of those marks. Likewise, despite widespread use of the word visa for its common English meaning, the introduction of the eVisa mark to the marketplace means that there are now two products, and not just one, competing for association with that word. This is the quintessential harm addressed by anti-dilution law.

JSL is not using the word visa for its literal dictionary definition, and this would be a different case if it were. Visa does not claim that it could enforce its Visa trademark to prevent JSL from opening "Orr's Visa Services," any more than

Apple could shut down Orr's Apple Orchard or Camel could fold up Orr's Camel Breeders. Visa doesn't own the word "visa" and may not "deplete the stock of useful words" by asserting otherwise. *New Kids on the Block* v. *News America Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992); *cf. Kellogg Co.* v. *Nat'l Biscuit Co.*, 305 U.S. 111, 116-17 (1938). Conferring anti-dilution rights to common English words would otherwise be untenable, as whole swaths of the dictionary could be taken out of circulation. Nor would a suit against Orr's Visa Services advance the purpose of anti-dilution law. Such use of the word would not create a new association for the word with a product; it would merely evoke the word's existing dictionary meaning, as to which no one may claim exclusivity.

**[8]** JSL argues that its use of the word "visa" is akin to Orr's Visa Services because the eVisa mark is meant to "connote the ability to travel, both linguistically and physically, through the English-speaking world" and therefore employs the word's common English meaning. JSL's site depicted the eVisa mark next to a booklet that looks like a passport, and it divided the services offered into the categories "Travel Passport," "Language Passport" and "Technology Passport." But these allusions to the dictionary definition of the word visa do not change the fact that JSL has created a novel meaning for the word: to identify a "multilingual education and information business." This multiplication of meanings is the essence of dilution by blurring. Use of the word "visa" to refer to travel visas is permissible because it doesn't have this effect; the word elicits only the standard dictionary definition. Use of the word visa in a trademark to refer to a good or service other than a travel visa, as in this case, undoubtedly does have this effect; the word becomes associated with two products, rather than one. This is true even when use of the word also gestures at the word's dictionary definition.

**[9]** JSL's allusions to international travel are more obvious and heavy-handed than Visa's, and JSL claims that its use of

the word is therefore "different" from Visa's. That's true; Visa plays only weakly off the word's association with international travel, whereas JSL embraced the metaphor with gusto. But dilution always involves use of a mark by a defendant that is "different" from the plaintiff's use; the injury addressed by anti-dilution law in fact occurs when marks are placed in new and different contexts, thereby weakening the mark's ability to bring to mind the plaintiff's goods or services. *See Mattel*, 296 F.3d at 903. The only context that matters is that the marks are both used in commerce as trademarks to identify a good or service, as they undoubtedly are in this case.

The district court was quite right in granting summary judgment to Visa and enjoining JSL's use of the mark.

**AFFIRMED.**