# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEVI STRAUSS & COMPANY,
                    *Plaintiff-Appellant,*

           v.

ABERCROMBIE & FITCH TRADING
COMPANY,
                    *Defendant-Appellee.*

No. 09-16322

D.C. No.
3:07-cv-03752-JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
June 16, 2010—San Francisco, California

Filed February 8, 2011

Before: Kenneth F. Ripple, Senior Circuit Judge,*
Pamela Ann Rymer and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Ripple

---

*The Honorable Kenneth F. Ripple, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

**COUNSEL**

Gregory S. Gilchrist, Townsend & Townsend & Crew, San Francisco, California, for the plaintiff-appellant.

J. Michael Keyes, K & L Gates, Spokane, Washington, for the defendant-appellee.

David H. Bernstein, Debevoise & Plimpton, New York, New York, for *amicus curiae* International Trademark Association.

**OPINION**

RIPPLE, Senior Circuit Judge:

Levi Strauss & Co. ("Levi Strauss") seeks review of a district court judgment that Abercrombie & Fitch Trading Co.

("Abercrombie") did not dilute Levi Strauss's trademarked "Arcuate" design in violation of the Trademark Dilution Revision Act of 2006 ("TDRA"), 15 U.S.C. § 1125(c). Levi Strauss maintains that the district court applied an incorrect legal standard in evaluating its dilution claim, namely that the junior mark be "identical or nearly identical" to the senior one. We agree with Levi Strauss that the "identical or nearly identical" standard did not survive Congress's enactment of the TDRA and that the district court's use of the incorrect standard was not harmless error. Accordingly, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

### A. The Stitched Designs

Levi Strauss created, and began selling, blue jeans in the 1870s. Since 1873, the company has stitched the back pocket of its jeans with two connecting arches that meet in the center of the pocket; Levi Strauss holds a federally registered trademark on this "Arcuate" design. Sales of garments bearing the Arcuate mark have accounted for more than ninety-five percent of Levi Strauss's revenue over the past thirty years, totaling roughly fifty billion dollars. Levi Strauss actively monitors use of competing stitching designs and enforces its trademark rights against perceived infringers.

In 2006, Abercrombie began using a stitching design on the back pockets of its jeans that, according to Levi Strauss, "incorporates the distinctive arcing elements of the Arcuate trademark." Appellant's Br. 4. Abercrombie's "Ruehl" design consists of two less-pronounced arches that are connected by a "dipsy doodle," which resembles the mathematical sign for infinity. The design on the Abercrombie jeans sits lower on the pocket than Levi Strauss's Arcuate design.**

---

**Images of the "Arcuate" and "Ruehl" designs appear at the end of this opinion.

## B.    District Court Proceedings

In 2007, Levi Strauss brought an action against Abercrombie for trademark infringement, unfair competition and trademark dilution under both federal and California state law. Before trial, Levi Strauss dropped its state-law trademark dilution claim, and it withdrew its claim for monetary relief on its federal dilution claim. Consequently, Levi Strauss's federal trademark dilution claim, for which it sought only injunctive relief, was tried before the court with advisory rulings from the jury.

During trial, Levi Strauss presented the testimony of Dr. Sanjay Sood. Dr. Sood conducted a survey to evaluate whether women associated Abercrombie's Ruehl design with Levi Strauss. Dr. Sood's "Confusion Survey" revealed that "[a]pproximately 30% of all respondents identified the Ruehl jeans as made, sponsored or endorsed by the same company that made the LEVI'S® jeans, as compared to lower percentages for the 'control' jeans." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. C 07-03752 JSW, 2009 WL 1082175, at *4 (N.D. Cal. Apr. 22, 2009). Dr. Sood testified that "the Ruehl design would erode the distinctiveness of the Arcuate mark, in light of what he opined was a significant level of confusion between the Ruehl jeans and the [Levi Strauss] jeans." *Id.* Dr. Sood also testified concerning a "Recognition Survey" that he had conducted. According to Dr. Sood, the survey revealed that "approximately 32% to 35% of the respondents actually associated the Arcuate mark with [Levi Strauss]." *Id.* at *5.

For its part, Abercrombie presented the testimony of Dr. Gerald Ford, who had been engaged in commercial marketing research for more than three decades and had offered expert testimony in over 50 trademark cases. Dr. Ford testified that Dr. Sood's confusion survey was not conducted according to generally accepted and standard practices; as a result, the survey was " 'so flawed that it render[ed] the survey results' and

Dr. Sood's conclusions 'meaningless.' " *Id.* (internal citations omitted). Nevertheless, Dr. Ford acknowledged that, "[i]f a likelihood of confusion survey is conducted in a valid and reliable manner, a finding that ten percent or more of the population is confused is problematic to a trademark owner." *Id.* Dr. Ford opined that Dr. Sood's recognition survey was problematic; specifically, it "was flawed[ ] because it did not control for spurious recognition, used ambiguous questions, lacked an appropriate control cell, and suffered from order bias." *Id.*

As part of its deliberations, the district court requested that the jury provide advisory rulings on factual issues related to Levi Strauss's federal dilution claims. With respect to the elements of the dilution claim, the court asked the jury to answer the following question: "Is Abercrombie's Ruehl design identical or nearly identical to the Arcuate trademark?" ER 67. Although the jury later determined that the Arcuate trademark was famous and distinctive, it found that the marks were not identical or nearly identical and also determined that the Arcuate trademark was not likely to be diluted by the Ruehl design.

## C.   Findings of Fact and Conclusions of Law

On April 22, 2009, the district court entered judgment in favor of Abercrombie on Levi Strauss's federal dilution claim. In its findings of fact, the district court noted that, "[w]ith the exception of visual depictions of the two designs, Dr. Sood's testimony regarding the results of the Confusion Survey was [Levi Strauss]'s only evidence that the Ruehl design was *identical or nearly identical* to the Arcuate mark." *Levi Strauss & Co.*, 2009 WL 1082175, at *5 (emphasis added). Although the district court acknowledged that Dr. Sood's survey suggested confusion among thirty percent of the participants, the court determined that Dr. Ford's critique of Dr. Sood's methodology was persuasive and that his testimony was more reliable than that offered by Dr. Sood.

Turning to its conclusions of law, the court first reviewed the elements of a claim under the TDRA, 15 U.S.C. § 1125(c). The court stated:

> To prevail on its dilution claim, [Levi Strauss] has the burden of proving by a preponderance of evidence the following elements: (a) that [Levi Strauss] is the owner of a trademark that is famous; (b) that the famous mark is distinctive, either inherently or through acquired distinctiveness; (c) that [Abercrombie] is making or has made use in commerce of an *identical or nearly identical* trademark, in this case the Ruehl design; (d) that [Abercrombie]'s use of its Ruehl design began after [Levi Strauss]'s Arcuate mark became famous; and (e) that [Abercrombie]'s use of its Ruehl design is likely to cause dilution by blurring of [Levi Strauss]'s Arcuate mark. 15 U.S.C. § 1125(c); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 200[8]).

*Levi Strauss & Co.*, 2009 WL 1082175, at \*7 (emphasis added). The district court noted that the advisory jury had not found that the Ruehl design and the Arcuate mark were "*identical or nearly identical*," a standard that required that "the two marks . . . be similar enough that a significant segment of the target group of customers sees the two marks as *essentially the same*." *Id.* (emphasis added).

After setting forth this standard for similarity, a standard which " 'is more stringent than in the infringement context,' " *id.* at \*8 (quoting *adidas-America, Inc. v. Payless Shoe Source, Inc.*, 546 F. Supp. 2d. 1029, 1060 (D. Ore. 2008)), the court observed that, although the evidence showed that Levi Strauss had "expended significant amounts of money advertising the Arcuate mark," this was not "a case where the two marks at issue involve only minor differences," *id.* The district court then reviewed aspects of the Arcuate mark and the Ruehl design and observed that "[t]his evidence demonstrates

that a significant segment of the target group of customers would not view the marks as *essentially the same*." *Id.* (emphasis added). It concluded that, consistent with the advisory jury's finding, Levi Strauss "has not established that [Abercrombie] is making commercial use of a mark that *is identical or nearly identical* to the Arcuate mark." *Id.* at *9 (emphasis added). The court then concluded:

> As noted, the test for similarity of the marks is more stringent in the dilution context than for likelihood of confusion purposes, and the two marks must be "*essentially the same mark*." For the reasons set forth above, the Court finds that the Ruehl design and the Arcuate mark are not visually similar. Furthermore, as set forth above, the Court does not find the results of Dr. Sood's survey to be entitled to any great weight. Thus, [Levi Strauss] has not put forth persuasive evidence of actual association between the Arcuate mark and the Ruehl design. Therefore, these factors weigh in [Abercrombie]'s favor and against a finding of likelihood of dilution.
>
> . . . .
>
> Having considered all of the evidence, even if the degree of inherent or acquired distinctiveness of the Arcuate mark and the degree of recognition of the mark weigh in [Levi Strauss]'s favor, the Court finds that those factors do not outweigh the factors that weigh in [Abercrombie]'s favor. Accordingly, the Court concludes, consistent with the advisory jury's finding, that [Levi Strauss] has not met its burden to establish by a preponderance of the evidence that the Ruehl design is likely to cause dilution by blurring of the Arcuate mark.

*Id.* (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 907 (9th Cir. 2002); footnote omitted; emphasis added).

The district court therefore entered judgment in favor of Abercrombie.

## DISCUSSION

Levi Strauss submits that the district court erred in requiring it to establish that its mark was identical or nearly identical to the Ruehl design. Levi Strauss looks to the plain language of 15 U.S.C. § 1125(c) and notes that the terms "identical or nearly identical" appear nowhere in the language of the statute. The statute, it maintains, does not require a prima facie showing of substantial similarity before a district court balances the dilution factors listed in § 1125(c)(2)(B). Instead, "degree of similarity" is one of several factors that a district court must balance in order to determine whether dilution has occurred and whether, therefore, a plaintiff is entitled to injunctive relief.[1]

Abercrombie, by contrast, bases its argument not on the language of the statute but, instead, on the case law of this court. It argues that, even after the passage of the TDRA, this court thrice has determined that a junior mark must be "identical or nearly identical" to that of the senior user in order for a trademark-dilution plaintiff to be entitled to relief. *See Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165 (9th Cir. 2007); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008); *Visa Int'l Serv. Ass'n v. JSL Corp.*, No. 08-15206, 2010 WL 2559003 (9th Cir. June 28, 2010).

To properly evaluate the parties' contentions, we must look at the origins of the "identical or nearly identical" standard, how it has been employed and whether it remains viable after the enactment of the TDRA.

---

[1]The International Trademark Association, amicus in this appeal, agrees with the interpretation of the TDRA proffered by Levi Strauss.

### A.  Origin of the "Identical or Nearly Identical" Standard

The "identical or nearly identical" requirement traces its roots in this circuit to *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002). In that case, a former "Playmate of the Year," Terri Welles, had used this descriptive on a website devoted to the sale of her pictures and to the promotion of her services as a spokeswoman. Playboy sued Welles on various theories, including a federal trademark dilution claim under the prior statute.[2] We determined that most of Welles's use of

---

[2]Specifically, the predecessor of the TDRA, the Federal Trademark Dilution Act ("FTDA"), provided:

(c) Remedies for dilution of famous marks

(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—

> (A) the degree of inherent or acquired distinctiveness of the mark;
>
> (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
>
> (C) the duration and extent of advertising and publicity of the mark;
>
> (D) the geographical extent of the trading area in which the mark is used;
>
> (E) the channels of trade for the goods or services with which the mark is used;
>
> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
>
> (G) the nature and extent of use of the same or similar marks by third parties; and

"Playmate of the Year" were nominative uses and, therefore, excepted from coverage. However, Welles's use of the abbreviation "PMOY" on the wallpaper of her site was not nominative, and, therefore was "not excepted from the anti-dilution provisions." *Playboy Enters.*, 279 F.3d at 806. As a result, we reversed the judgment in favor of Welles on the dilution issue and gave the following instructions to the district court:

> We note that if the district court determines that "PMOY" is not entitled to trademark protection, PEI's claim for dilution must fail. The trademarked term, "Playmate of the Year" is not *identical or nearly identical* to the term "PMOY." Therefore, *use of the term "PMOY" cannot, as a matter of law, dilute the trademark "Playmate of the Year."*

*Id.* (emphasis added; footnote omitted).

Our authority for the "identical or nearly identical" language employed in *Playboy Enterprises* was *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 832 (8th Cir. 1999), and J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:90.2 (4th ed. 2001). *See Playboy Enters.*, 279 F.3d at 806 n.41. In *Luigino's*, the Eighth Circuit held that, "[t]o support an action for dilution by blurring, 'the marks must at least be similar enough that a significant segment of the two target groups of customers sees the two marks as essentially the same.' " 170 F.3d at 832 (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:90.1, at 24-145 (4th ed. 1998)). In support of this proposition, the Eighth Circuit not only relied on McCarthy on Trademarks and Unfair Competition, but also

---

(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(1) (2005).

*Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1029 (2d Cir. 1989).

Tracing the ancestry of the standard a step further, *Mead Data Central* involved a trademark dilution claim brought under a New York state statute. According to the Second Circuit, the legislative history of that act stated "the purpose of the statute as preventing 'the whittling away of an established trade-mark's selling power and value through *its* unauthorized use by others upon dissimilar products.' " *Mead Data Cent.*, 875 F.2d at 1028 (quoting 1954 N.Y. Legis. Ann. 49; emphasis added by the Second Circuit). The court continued:

> If we were to interpret literally the italicized word "its", we would limit statutory violations to the unauthorized use of the identical established mark. . . . However, since the use of obvious simulations or markedly similar marks might have the same diluting effect as would an appropriation of the original mark, the concept of exact identity has been broadened to that of substantial similarity. Nevertheless, in keeping with the original intent of the statute, the similarity must be substantial before the doctrine of dilution may be applied.

*Id.* at 1028-29 (internal citations omitted). The court stopped short of requiring that "the marks in question . . . be sufficiently similar that confusion may be created as between the marks themselves." *Id.* at 1029. Instead, it held that "the marks must be 'very' or 'substantially' similar and that, absent such similarity, there can be no viable claim of dilution." *Id.*[3]

---

[3]In a concurring opinion, one member of the panel articulated a different approach. He believed that there were two elements necessary to establish a dilution claim under state law: "an extremely strong mark" and "a likelihood of dilution." *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1032 (2d Cir. 1989) (Sweet, J., concurring).

**[1]** Thus, the requirement of identity, or substantial similarity, pre-dates the adoption of the FTDA in 1996 and has its origins in state dilution law, specifically that of the State of New York.

### B.   Case Law Employing the "Identical or Nearly Identical" Standard

After *Playboy Enterprises*, we again employed the "identical or nearly identical" formulation in *Thane International, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002). In *Thane*, we grappled with the issue whether Thane's use of "OrbiTrek" diluted Trek's trademarked name. In considering the "Identity of the Marks," the court gave a more thorough explanation for its adoption of the "identical or nearly identical" standard:

> We begin from the recently-established requirement that for a dilution claim to succeed, the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark. *Playboy Enterprises*, 279 F.3d at 805. Such a requirement comports with *the statutory language, the four-part dilution test derived from that language* outlined in *Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316,

---

Likelihood of dilution, he explained, required a factual inquiry, made on a "case-by-case" basis, with courts considering the following factors "1) similarity of the marks 2) similarity of the products covered by the marks 3) sophistication of consumers 4) predatory intent 5) renown of the senior mark 6) renown of the junior mark." *Id.* at 1035. Turning to the "similarity of the marks," the concurring judge observed that "[d]ilution is likely only where the junior mark is similar to the senior mark." *Id.* However, "[e]xact identity between the marks is not required, but the more similar the marks the higher the likelihood of dilution." *Id.* (internal citations omitted). These factors are very similar to the six enumerated factors set forth by Congress in the TDRA for courts to employ in determining whether a mark or trade name is likely to cause dilution. *See* 15 U.S.C. § 1125(c)(2)(B)(i)-(vi).

1324 (9th Cir. 1998) and *Avery Dennison* [*Corp. v. Sumpton,* 189 F.3d 868, 874 (9th Cir. 1999)],[4] and *with the statute's legislative history and purposes.*

The statute establishes that the junior user, to be liable for dilution, must use "a mark or trade name . . . after *the* mark has become famous." § 1125(c)(1) (emphasis added). As articulated in *Panavision* and *Avery Dennison*, the test for dilution similarly provides that to make out an antidilution cause of action, a plaintiff must show that "*its* mark is famous" and "the defendant is making commercial use of *the* mark in commerce." *Avery Dennison*, 189 F.3d at 874 (emphasis added); *see Panavision*, 141 F.3d at 1324; *see also Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (" 'Dilution' refers to the 'whittling away of the value of a trademark' when *it's* used to identify different products.") (emphasis added) (citation omitted). These locutions indicate that the defendant must use essentially the *same* mark, not just a similar one.

*Id.* at 905 (emphasis in first paragraph added). Thus, *Thane* tied the requirement for identity or near identity to the language of the then-governing FTDA and to the tests that we had developed in interpreting the FTDA.

---

[4]In *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998), we articulated the following test under the FTDA:

In order to prove a violation of the Federal Trademark Dilution Act, a plaintiff must show that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. 15 U.S.C. § 1125(c).

*Id.* at 1324; *see also Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874 (9th Cir. 1999) (same).

In adopting this standard, we also were persuaded by the legislative history of the FTDA and by the McCarthy treatise's explanation of the nature of a dilution claim. The legislative history, although "not definitive on the issue," "suggest[ed] that the marks must be identical or close thereto." *Id.* Specifically, the Senate Report had given the following examples of dilution: Kodak being used for pianos and Buick being used for aspirin. *Id.* at 906 (citing S. Rep. No. 100-515, at 7 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 5577, 5583). Furthermore, referencing the McCarthy treatise, we observed that "a dilution claim alleges a form of appropriation." *Id.* We continued:

> Appropriation implies the adoption of the mark itself, not the use of a similar mark. As discussed previously, infringement is designed to protect against consumer confusion about the source of a product that may arise, *inter alia*, because a company uses a similar mark. Dilution, on the other hand, protects the distinctiveness of a particular mark whether or not the products compete or consumer confusion exists. § 1127. Because dilution and likelihood of confusion tests are directed at different actions, it does not make sense to import the relatively subjective similarity of the marks test from the likelihood of confusion context into the dilution context. *See* 4 J. McCarthy, *Trademarks and Unfair Competition*, § 24:90.2 (4th ed. 2001).

*Id.*

Finally, we observed, other courts similarly had adopted an "identical or nearly identical" requirement. Indeed, *Playboy Enterprises* had borrowed this standard from the Eighth Circuit's decision in *Luigino's*, and other circuits had employed equally stringent standards for similarity.

Thus, although the identical or nearly identical standard had its roots in pre-FTDA state dilution law, we determined

in *Thane* that our adoption of the standard was rooted in the language of the FTDA, the legislative history and purpose of that statute, our prior interpretations of the FTDA, and the policies we believed were embodied in that statute.

## C.   The *Moseley* Decision and Adoption of the TDRA

After our decision in *Thane*, the Supreme Court handed down a decision that greatly impacted many courts of appeals' interpretations of the FTDA. In *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003), the Court held, contrary to the approach that had been taken by this court, as well as the courts of appeals for the Second and Sixth Circuits, that the text of the FTDA "unambiguously requires a showing of *actual* dilution, rather than a *likelihood* of dilution." *Id.* at 433 (emphasis added).

However, this requirement of actual dilution was not long-lived. In 2006, largely in response to the *Moseley* decision, Congress enacted the TDRA. In doing so, Congress did not simply alter the language on which the Court in *Moseley* had relied;[5] instead, Congress replaced the FTDA with a more detailed statute. The TDRA did provide relief for "likely," as opposed to actual, dilution. 15 U.S.C. § 1125(c)(1). However, it also explicitly provided relief for dilution "by blurring" or by "tarnishment," *id.*, and defined both types of dilution, *id.* § 1125(c)(2). Section 1125(c)(1) of Title 15 now states in relevant part:

---

[5]The FTDA had provided: "The owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and *causes dilution of the distinctive quality of the mark*, and to obtain such other relief as is provided in this subsection." 15 U.S.C. § 1125(c) (2005) (emphasis added). In *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003), the Court held that the highlighted language required a showing of actual dilution.

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). Subsection (c)(2) defines "dilution by blurring" accordingly:

(B) For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

(i) The degree of similarity between the mark or trade name and the famous mark.

(ii) The degree of inherent or acquired distinctiveness of the famous mark.

(iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv) The degree of recognition of the famous mark.

(v) Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B).

**[2]** Several aspects of the TDRA are worth noting. The first, as mentioned previously, is that Congress did not merely make surgical linguistic changes to the FTDA in response to *Moseley*. Instead, Congress created a new, more comprehensive federal dilution act. Furthermore, any reference to the standards commonly employed by the courts of appeals— "identical," "nearly identical," or "substantially similar"—are absent from the statute. The TDRA defines "dilution by blurring" as the "association arising from the *similarity* between a mark or a trade name and a famous mark that impairs the distinctiveness of the famous mark." *Id.* § 1125(c)(2)(B) (emphasis added). Moreover, in the non-exhaustive list of dilution factors that Congress set forth, the first is "[t]he degree of similarity between the mark or trade name and the famous mark." *Id.* § 1125(c)(2)(B)(i). Thus, the text of the TDRA articulates a different standard for dilution from that which we utilized under the FTDA.

## D.  Post-TDRA, Ninth Circuit Case Law

Abercrombie claims that, despite the absence of any reference in the TDRA to the "identical or nearly identical standard," this standard nonetheless survived the passage of the TDRA. It points to three cases from this court to support that claim. Two of these cases, *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165 (9th Cir. 2007), and *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008), were addressed by the parties in their briefs; Abercrombie maintains that Levi Strauss's "entire appeal is foreclosed" by these cases. *See* Appellee's Br. 12. The third case, *Visa International Service Association v. JSL Corp.*, No. 08-15206, 2010 WL 2559003 (9th Cir. June 28, 2010), was decided after oral argument in this appeal. Abercrombie submitted the case as further authority in sup-

port of its position, *see* Fed. R. App. P. 28(j), and Levi Strauss similarly submitted its comments on the case's application to the matter presently before the court.

**[3]** Our review of these cases leads us to conclude that the issue that we must decide today—whether, to establish dilution by blurring under the TDRA, the junior mark must be "identical or nearly identical" to the senior mark—was not presented or squarely resolved in these prior cases.

## 1.

The first case on which Abercrombie relies is *Perfumebay.com*. In *Perfumebay.com*, eBay brought a dilution claim under California state law. In analyzing the state-law dilution claim, we observed that the state claim was subject to the same analysis as a federal claim, which required that "[t]he mark used by the alleged diluter . . . be identical, or nearly identical, to the protected mark for a dilution claim to succeed." *Perfumebay.com*, 506 F.3d at 1180 (internal quotation marks and citation omitted). Although applying California dilution law, we noted that our "emphasis on the extent to which the marks are nearly identical and the strength of the senior mark is bolstered by Congress' passage of the Trademark Dilution Revision Act of 2006," which explicitly included " '[t]he degree of similarity between the mark or trade name and the famous mark' " and " '[t]he degree of inherent or acquired distinctiveness of the famous mark' " in its dilution analysis. *Id.* at 1181 n.9 (quoting 15 U.S.C. § 1125(c)(2)(B)).

We do not believe these observations ought to be considered a binding determination that the "identical or nearly identical" standard survives the passage of the TDRA. We have held that, "where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so

is necessary in some strict logical sense." *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc). However, in *Perfumebay.com*, we did not "confront" the issue of the applicable standard under the TDRA. *Perfumebay.com* involved a dilution claim under California state law. *See Perfumebay.com*, 506 F.3d at 1180 n.8 ("eBay's dilution claim is made pursuant to Cal. Bus. & Prof. Code § 14330."). We previously had held that California's state dilution law was equivalent to the FTDA. *Id.* ("eBay's 'state law dilution claim is subject to the same analysis as its federal claim.' " (quoting *Panavision Int'l*, 141 F.3d at 1324)). At the time that *Perfumebay.com* was decided, the California legislature had not altered its dilution statute to reflect the changes in the newly enacted TDRA.[6] Because the California statute had not been altered in the same manner as the federal statute, there simply was no opportunity for us to consider whether a change in the language of the federal statute effected a change in the standard applicable to federal claims. Indeed, our reference to the TDRA in *Perfumebay.com* was limited to our observation in footnote 9 that our emphasis on the degree of similarity and the strength of the senior mark was "bolstered" by Congress's passage of the TDRA. *Id.* at 1181 n.9. In sum, *Perfumebay.com* did not present an opportunity for the court to address squarely the question currently before this panel. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 109 n.4 (2d Cir. 2009) (referencing *Perfumebay.com* and stating that "[t]he Ninth Circuit has not resolved whether this 'essentially the same' standard also applies to federal dilution claims post-TDRA").

---

[6]"In June, 2007, the International Trademark Association amended the anti-dilution provisions of the Model Bill to reflect the Trademark Dilution Revision Act of 2006. The 2007 version of the model anti-dilution provisions generally track the 2006 federal law with changes necessary to adopt the law to a state-wide regime. . . . In 2007, California was one of the first states to enact the 2007 version of the Model State Trademark Bill." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 22:6.25 (4th ed. 2010) (footnotes omitted).

**2.**

The same is true of our decision in *Jada Toys*. Jada Toys had been using the name HOT RIGZ in conjunction with its line of toy trucks; Mattell believed that HOT RIGZ was diluting its HOT WHEELS trademark and therefore sued Jada Toys under state and federal law. Both at the time that Mattel instituted its action in 2004, and at the time the district court granted summary judgment against Mattel in 2005, the FTDA was the governing federal law. Similarly, when the action was briefed to this court, the parties framed their arguments under the FTDA, not the TDRA. Thus we originally decided the case under the FTDA and later amended the opinion in response to the TDRA.[7]

The reason for amending the opinion was to apply the new "likelihood of dilution standard" incorporated into the then recently enacted TDRA. *See Jada Toys*, 518 F.3d at 634 n.2. Beyond that change, the amended *Jada Toys* opinion did not confront any of the other differences between the TDRA and the FTDA. This is unsurprising because the plaintiff-appellant Mattel was entitled to a remand both under *Thane*'s interpretation of the FTDA as well as under the TDRA's multifactor inquiry.

In both *Jada Toys* opinions, we stated that Mattel had to "show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution," changing only the fourth element in the amended opinion to "likely to cause dilution" instead of "dilutes the quality of the mark." *Compare Jada Toys*, 518 F.3d at 634, *with Jada Toys, Inc. v. Mattel, Inc.*, 496 F.3d 974, 980-81 (9th Cir. 2007). We made no change to the statement that:

---

[7]*See Jada Toys, Inc. v. Mattel, Inc.*, 496 F.3d 974 (9th Cir. 2007), *amended and superseded by Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008).

[F]or a plaintiff to establish that the mark is being used in commerce (as per step two), "the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark." *Thane Int'l*, 305 F.3d at 905(noting that this circuit's description of dilution by blurring and by tarnishment requires a defendant to use the plaintiff's actual mark) (citation omitted). In order to be nearly identical, two marks "must be 'similar enough that a significant segment of the target group of customers sees the two marks as essentially the same' " *Id.* at 906 (quoting *Playboy Enters.*, 279 F.3d at 806 n. 41).

*Compare Jada Toys*, 518 F.3d at 634, *with Jada Toys*, 496 F.3d at 981. Applying *Thane*'s standard, *Jada Toys* found a triable issue of fact regarding whether HOT WHEELS was "nearly identical" to HOT RIGZ. *See Jada Toys*, 518 F.3d at 635.

We went on, after finding the marks nearly identical, separately to determine that a reasonable jury could find that HOT RIGZ was likely to dilute Mattel's HOT WHEELS trademark based on the six factors enumerated in the TDRA. *See Jada Toys*, 518 F.3d at 635-36. Because Mattel survived Jada Toys' motion for summary judgment under the standard articulated in *Thane*, we were not confronted with the discrepancy between *Thane*'s standard and the textual changes embodied in the TDRA.[8] In revising the *Jada Toys* opinion to be consistent with the TDRA's shift to a "likelihood" of dilution standard, which was the principal focus of the case, we never considered that other parts of the TDRA might affect our standard of analysis for the requisite degree of similarity.

---

[8]Recall that *Thane*'s standard considered only the marks' visual similarity and the senior mark's distinctiveness, *see Perfumebay.com*, 506 F.3d at 1180-81 (quoting *Thane*, 305 F.3d 907 n.7), whereas the TDRA considers all relevant factors and enumerates six of particular relevance, *see* 15 U.S.C. § 1125(c)(2)(B).

**[4]** As with *Perfumebay.com*, we do not believe that *Jada Toys* binds us to apply the "identical or nearly identical" standard for purposes of assessing a dilution by blurring claim under the TDRA. *Jada Toys* was tried under the FTDA, and the FTDA was the law employed by the parties in their briefing before this court. We resolved the case without *any* discussion of whether *Thane*'s standard survived the change in law. Indeed, we copied the FTDA analysis of "near identity" into the TDRA opinion without mentioning the material changes in the statute's language regarding similarity. The parties never briefed the applicability of the TDRA or the significance of its revisions to the antidilution law. Nor did the facts of the case require us to confront the possible implications of a less stringent similarity standard. In short, our use of the "identical or nearly identical" standard in *Jada Toys* cannot represent a definitive resolution of the issue before us "after reasoned consideration," and, therefore, does not establish the standard for dilution under the TDRA.

### 3.

Finally, the parties have asked us to consider our recent decision in *Visa International*. In that case, Visa International sued JSL Corporation, which operates eVisa, "a 'multilingual education and information business that exists and operates exclusively on the Internet,' at www.evisa.com." *Visa Int'l Serv. Ass'n*, 2010 WL 2559003, at *1. Visa International claimed that eVisa was likely to dilute the Visa trademark. The district court agreed with Visa International and granted summary judgment in its favor. We affirmed. Both parties rely on the same passage of the opinion:

> A plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to

dilute plaintiff's mark. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). . . .

There are two types of dilution, but here we are concerned only with dilution by blurring, which occurs when a mark previously associated with one product also becomes associated with a second. *See* 15 U.S.C. § 1125(c)(2)(B); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903-04 (9th Cir. 2002). This weakens the mark's ability to evoke the first product in the minds of consumers. "For example, Tylenol snowboards, Netscape sex shops and Harry Potter dry cleaners would all weaken the 'commercial magnetism' of these marks and diminish their ability to evoke their original associations." *Mattel*, 296 F.3d at 903. . . .

. . . Congress has enumerated factors courts may use to analyze the likelihood of dilution, including the similarity between the two marks and the distinctiveness and recognition of the plaintiff's mark. 15 U.S.C. § 1125(c)(2)(B)(i), (ii), (iv); *see also PerfumeBay.com, Inc. v. eBay, Inc.*, 506 F.3d 1165, 1181 n.9 (9th Cir. 2007). And, in an appropriate case, the district court may conclusively determine one or more of these factors before trial.

The marks here are effectively identical; the only difference is the prefix "e," which is commonly used to refer to the electronic or online version of a brand. That prefix does no more to distinguish the two marks than would the words "Corp." or "Inc." tacked onto the end. *See Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1036 (9th Cir. 2007) (use of identical mark provides "circumstantial evidence" of dilution).

And Visa is a strong trademark. "In general, the more unique or arbitrary a mark, the more protection

> a court will afford it." *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987).

*Id.* at \*1-2.

In its 28(j) letter submitted on July 1, 2010, Abercrombie sets forth three reasons why "the opinion conclusively establishes the applicability of the 'identical or nearly identical' standard under the TDRA." First, Abercrombie notes that Visa International relied on cases that employ the "identical or nearly identical" standard. Second, Abercrombie believes that the "Court's emphasis on the 'one mark, two products' paradigm shows that the 'identical or nearly identical' standard provides the appropriate legal framework under the TDRA." Third, it continues, "in assessing the similarity between the two marks at issue, the Court applied the identical or nearly identical standard."

We cannot accept Abercrombie's view of *Visa International*. We believe it clear that our reference to prior cases and our use of the "one mark, two products" paradigm were of little significance to our analysis. Nor can we agree that *Visa International* "applied the identical or nearly identical standard." In evaluating the district court's judgment in *Visa International*, we stated that "Congress has enumerated factors courts may use to analyze the likelihood of dilution, including *the similarity* between the two marks and the distinctiveness and recognition of the plaintiff's mark." *Visa Int'l Serv. Ass'n*, 2010 WL 2559003, at \*1 (emphasis added). We then went on to evaluate the evidence presented according to those statutory standards. With respect to similarity, we observed that "[t]he marks here are effectively identical" with the "only difference" being "the prefix 'e.' " *Id.* at \*2. Our reference to "effectively identical" was a factual assessment of the similarity of the two marks with which we were presented. There simply is no basis for asserting that we required a showing of identity or near identity in evaluating Visa Inter-

national's claim under the TDRA.[9] With respect to the factors of the distinctiveness and recognition of the Visa mark, we observed that Visa had "introduced uncontroverted evidence that Visa is the world's top brand in financial services and is used for online purchases almost as often as all other credit cards combined." *Id.*

[5] Having reviewed all of the authorities provided by Abercrombie, we conclude that we are the first panel to address the issue whether the "identical or nearly identical" standard survives Congress's adoption of the TDRA. We turn now to that question.

## E. Interpretation of the TDRA

### 1.

Our method of statutory interpretation is well established:

> Statutory interpretation begins with the language of the statute. *See United States v. Ron Enters., Inc.*, 489 U.S. 235, 241 (1989). When the plain meaning of a statutory provision is unambiguous, that meaning is controlling. *Id.* at 242. To determine the plain meaning of a statutory provision, we examine not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy. *See Green v. Commissioner*, 707 F.2d 404, 405 (9th Cir. 1983). If ambiguity exists, we may use legislative history as an aid to interpretation. *See id.*; *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1453 (9th Cir. 1992).

---

[9]Indeed, as we shall discuss later, *see infra* at 2399-2400, we believe that the manner in which the panel in *Visa International Service Association v. JSL Corp.*, No. 08-15206, 2010 WL 2559003 (9th Cir. June 28, 2010), applied the TDRA is consistent with the interpretation of the statute upon which we base today's decision.

*Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999) (parallel citations omitted). Here, moreover, the language of the new statute, when compared to the language of the former statute, provides a firm basis for decision.

**[6]** Beginning with subsection (c)(1) of 15 U.S.C. § 1125, Congress provided that "the owner of a famous mark . . . shall be entitled to an injunction against another person who . . . commences use of *a* mark or trade name in commerce that is likely to cause dilution." 15 U.S.C. § 1125(c) (emphasis added). When referring to the junior mark, Congress did not authorize an injunction against another person who commences use of "the" mark; use of the definite article "the" clearly would have signaled that the junior mark had to be the same as the senior. Instead, Congress employed the indefinite article "a," which indicates that any number of unspecified, junior marks may be likely to dilute the senior mark.

**[7]** Turning to the language of subsection (c)(2)(B), the TDRA defines "dilution by blurring" as the "association arising from the *similarity* between a mark and a trade name and a famous mark that impairs the distinctiveness of the famous mark." *Id.* § 1125(c)(2)(B) (emphasis added). Congress did not require an association arising from the "substantial" similarity, "identity" or "near identity" of the two marks. The word chosen by Congress, "similarity," sets forth a less demanding standard than that employed by many courts under the FTDA.

This analysis of the language of the statute, and our comparison of this language with the now-repealed statute, are further supported by Congress's decision to employ, in subsection (c)(2)(B), a non-exhaustive list of relevant factors to determine when dilution has occurred. Congress's implementation of such a methodology is simply not compatible with a determination that identity, near identity or substantial similarity are necessary to constitute a threshold showing for relief

under § 1125(c). Indeed, Congress chose instead to make the "degree of *similarity* between the mark or trade name and the famous mark," *id.* § 1125(c)(2)(B)(i) (emphasis added), to be the first of the six (or more) relevant factors to be considered.

No doubt, similarity has a special role to play in the implementation of the new statute's multifactor approach. After all, dilution by blurring is defined by the statute as an "association arising from the similarity between a mark . . . and a famous mark." *Id.* § 1125(c)(1)(B). It is also the *first* factor listed in the multifactor approach. Nevertheless, Congress's decision to make "degree of similarity" one consideration in a multifactor list strongly suggests that it did not want "degree of similarity" to be the necessarily controlling factor.

Finally, we believe that it is significant that, in adopting the TDRA, Congress decided to re-write 15 U.S.C. § 1125(c), as opposed to altering discrete wording or subsections. This action suggests that Congress did not wish to be tied to the language or interpretation of prior law, but instead crafted a new approach to our consideration of dilution-by-blurring claims.[10]

---

[10]Abercrombie urges us to look to the legislative history of the TDRA as support for its claim that the "identical or nearly identical" standard survives adoption of that statute. However, " 'we do not resort to legislative history to cloud a statutory text that is clear.' " *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 581 n.11 (9th Cir. 2010) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994)). The TDRA contains no language that suggests that identity, near identity or substantial similarity is required in order to show dilution. Furthermore, use of legislative history is particularly inappropriate in circumstances where, as here, the "legislators' published statements do not squarely address the question presented." *Oregon v. Ashcroft*, 368 F.3d 1118, 1136 (9th Cir. 2004). Although the House Committee cited its earlier report on the FTDA to help explain the TDRA, *see* H.R. Rep. No. 109-23 (2005), *reprinted in* 2006 U.S.C.C.A.N. 1091, the legislative history is not precise enough to overcome the clarity of the text. We need not decide the extent of continuity between the FTDA and TDRA because, insofar as it is relevant to this case, there is none — *Thane* is plainly inconsistent with the TDRA's text.

**[8]** Thus, the plain language of 15 U.S.C. § 1125(c) does not require that a plaintiff establish that the junior mark is identical, nearly identical or substantially similar to the senior mark in order to obtain injunctive relief. Rather, a plaintiff must show, based on the factors set forth in § 1125(c)(2)(B), including the degree of similarity, that a junior mark is likely to impair the distinctiveness of the famous mark.

Our interpretation of the TDRA is compatible with the case law of the only other court of appeals to have addressed squarely the question whether the requirement of identity or substantial similarity survives the TDRA. In *Starbucks*, the company brought a federal dilution claim against Wolfe's based on its use of the term "Charbucks" in connection with one of its coffee blends. The district court found that "the marks were not substantially similar" and "that '[t]his dissimilarity alone is sufficient to defeat [Starbucks's] blurring claim.' " *Starbucks*, 588 F.3d at 107. The Second Circuit disagreed. It acknowledged that, pre-TDRA, it had required plaintiffs to show that the marks were " 'very' or 'substantially similar' " before they could prevail on a federal dilution claim. *Id.* (quoting *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 167 (2d Cir. 2004)). This was no longer the case under the TDRA, the court explained:

> The post-TDRA federal dilution statute, however, provides us with a compelling reason to discard the "substantially similar" requirement for federal trademark dilution actions. The current federal statute defines dilution by blurring as an "association arising from the similarity between a mark . . . and a famous mark that impairs the distinctiveness of the famous mark," and the statute lists six non-exhaustive factors for determining the existence of an actionable claim for blurring. 15 U.S.C. § 1125(c)(2)(B). Although "similarity" is an integral element in the definition of "blurring," we find it significant that the federal dilution statute does not use

the words "very" or "substantial" in connection with the similarity factor to be considered in examining a federal dilution claim.

*Id.* at 108. Furthermore, the court continued, in addition to leaving out any modifier for "similarity," Congress also employed specific language that cannot be reconciled with a requirement of substantial similarity; the court stated:

> [O]ne of the six statutory factors informing the inquiry as to whether the allegedly diluting mark "impairs the distinctiveness of the famous mark" is "[t]he *degree* of similarity between the mark or trade name and the famous mark." 15 U.S.C. § 1125(c)(2)(B)(i) (emphasis added). Consideration of a "degree" of similarity as a factor in determining the likelihood of dilution does not lend itself to a requirement that the similarity between the subject marks must be "substantial" for a dilution claim to succeed.

*Id.* (internal citations omitted); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 111 n.18 (2d Cir. 2010) ("We have recently explained that under the [TDRA] the similarity between the famous mark and the allegedly blurring mark need not be 'substantial' in order for the dilution by blurring claim to succeed.").[11]

Although we did not speak directly to the issue in *Visa International*, we believe that our decision in that case is consonant with the interpretation of the TDRA that we adopt here. In *Visa International*, we reviewed the district court's

---

[11]We have held that the factors a court may consider under § 1125(c)(2)B)(i-vi) are not necessarily entitled to the same weight. A sufficiently strong showing of similarity can overcome all other relevant factors. *See Visa Int'l*, 610 F.3d at 1090 (affirming summary judgment on the basis of a junior mark "effectively identical" to a "strong" senior mark).

grant of summary judgment in favor of Visa on its trademark dilution claim. We noted that "likelihood of dilution" is a factual inquiry "generally not appropriate for decision on summary judgment." *Visa Int'l*, 2010 WL 2559003, at *1. We pointed out that Congress had "enumerated factors courts may use to analyze the likelihood of dilution, including the similarity between the two marks and the distinctiveness and recognition of the plaintiff's mark." *Id.* (citing 15 U.S.C. § 1125(c)(2)(B)(i), (ii), (iv)). Evaluating these factors, we determined that "[t]he district court was quite right in granting summary judgment to Visa." *Id.* at *4. In essence, we considered the evidence in light of the factors set forth in § 1125(c)(2)(B). We identified "similarity" as one of the factors a court should consider and, notably, did not mention a requirement that the marks be "identical or nearly identical." Most importantly, we took the degree of similarity into account along with the other § 1125(c)(2)(B) factors in determining whether dilution was likely to occur. In short, although not addressing the issue now before us head-on in *Visa International*, we applied the methodology that we have described here and made no reference to a requirement of "identity or near identity" of the marks.[12]

## F.   The District Court's Error Was Not Harmless

Abercrombie also submits that, even if the district court erred in applying the "identical or nearly identical" requirement, the judgment nonetheless should be affirmed because any error was harmless. According to Abercrombie, the district court determined the Arcuate mark and the Ruehl design were not visually similar. Because "similarity" is the correct

---

[12]Although we hold that a particular degree of similarity is not a threshold, similarity is the necessary predicate for dilution analysis. *See* 15 U.S.C. § 1125(c)(2)(B) (" '[D]ilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark . . . ."). And greater degrees of similarity manifestly are more likely to support a finding of dilution.

standard under the TDRA, Levi Strauss suffered no prejudice as a result of the district court's application of the incorrect standard. Abercrombie also notes that, in assessing the likelihood of dilution, the district court not only considered whether the marks were identical, but also took into account the other five factors set forth in § 1125(c)(2)(B). Abercrombie maintains that, because the court engaged in a weighing of all of the factors, the "similarity" requirement played only an insignificant role in its determination.

Abercrombie presents a very strained view of the district court's opinion. In its order entering judgment for Abercrombie, the court noted that "[t]he advisory jury found that the Ruehl design and the Arcuate mark were not identical or nearly identical." *Levi Strauss & Co.*, 2009 WL 1082175, at *7. It also observed that the test for similarity in a dilution context "is more stringent than in the infringement context." *Id.* (internal quotation marks omitted). After evaluating the visual depictions of the designs, the court concluded that "[t]his evidence demonstrates that a significant segment of the target group of customers would not view the marks as *essentially the same*." *Id.* at *8 (emphasis added). The court then reviewed Dr. Sood's testimony and concluded that, given the survey shortcomings, there was insufficient evidence that target customers would "see the Ruehl design and the Arcuate mark as *essentially the same*." *Id.* (emphasis added). In summary, the court stated: "[T]he Court concludes, consistent with the advisory jury's finding, that [Levi Strauss] has not established that [Abercrombie] is making commercial use of a mark that is identical or nearly identical to the Arcuate mark." *Id.* at *9. Use of the "identical or nearly identical" standard permeated the court's analysis and provided the basis upon which the court evaluated the evidence.

This standard also played a pivotal role in the court's determination that the Ruehl design was not likely to dilute the Arcuate mark. With respect to the similarity of the marks, the court observed that the two marks must be essentially the

same and that, "[f]or the reasons set forth above, the Court finds that the Ruehl design and the Arcuate mark are not visually similar." *Id.* In other words, the court equated similarity with sameness and employed the latter, more stringent definition when entering its findings of fact.

**[9]** Finally, our review of the district court's balancing of the relevant factors convinces us that application of the incorrect standard affected its dilution determination. According to the district court, degree of similarity was only one of three factors that weighed in Abercrombie's favor. The district court assumed, without deciding, that Levi Strauss also had two factors—acquired distinctiveness and degree of recognition—that weighed in its favor. Thus, application of the correct, less-demanding standard could have tipped the balance in favor of Levi Strauss. The degree of similarity between the Ruehl and Arcuate marks may be insufficient to support a likelihood of dilution, but that conclusion can come only after consideration of the degree of similarity in light of all other relevant factors and cannot be determined conclusively by application of an "essentially the same" threshold.

**[10]** Given the relative balance of the parties' positions, we cannot say, with any confidence, that the district court would have reached the same result absent the legal error. *See Galdamez v. Potter*, 415 F.3d 1015, 1025 (9th Cir. 2005) ("presum[ing] prejudice where civil trial error is concerned" and shifting the burden to the defendant "to demonstrate that 'it is more probable than not that the jury would have reached the same verdict' had it been properly instructed" (quoting *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005))). We therefore must reverse the judgment of the district court with respect to Levi Strauss's claim under the TDRA.

REVERSED and REMANDED.

APPENDIX



Levi Strauss's "Arcuate" design.



Abercrombie's "Ruehl" design.